1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF CONNECTICUT
2


3


4    – – – – – – – – – – X
     UNITED STATES OF AMERICA,      |
5                    Plaintiff,     |   3:08cr242(CSH)
                                    |
6                vs.                |
                                    |
7    PETER C. BOTTI,                |
                     Defendant.     |   February 9, 2011
8    – – – – – – – – – – X

9

10                                      Federal Building
                                        157 Church Street
11                                      New Haven, Connecticut

12

13                          SENTENCING

14

15

16   Held before:

17       The Honorable CHARLES S. HAIGHT, JR.,
         U.S.D.C Senior Judge
18

19

20

21

22

23
                        FALZARANO COURT REPORTERS
24                      117 North Saddle Ridge
                     West Simsbury, Connecticut 06092
25                          860.651.0258

                        Falzarano Court Reporters

```
 1   APPEARANCES:

 2        For the Government:

 3
            OFFICE OF THE UNITED STATES ATTORNEY
 4          915 Lafayette Boulevard
            Bridgeport, Connecticut  06604
 5          203.696.3000
                       BY:  RICHARD J. SCHECHTER, ESQ.
 6                          RAHUL KALE, ESQ.
                            Assistant U.S. Attorneys
 7

 8        For the Defendant:

 9          GULASH & RICCIO
            350 Fairfield Avenue
10          Bridgeport, CT  06601
            203.367.7440
11                     By:  EUGENE J. RICCIO, ESQ.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1
 2                    (Court commenced:  10:43 a.m.)
 3
 4             THE COURT:  Good morning, all.  The case
 5        is before the court for the sentencing of the
 6        Defendant in this action, Peter Botti,
 7        following his plea of guilty to a count of
 8        money structuring in violation of 31 United
 9        States Code, Sections 5324(a)(3) and
10        5324(D)(1).
11             Is the Defendant ready to proceed?
12             MR. RICCIO:  Yes, your Honor.
13             THE COURT:  Is the Government ready to
14        proceed?
15             MR. SCHECHTER:  Yes, your Honor.
16             THE COURT:  Very good.  I will follow
17        this procedure.  First of all, I want to
18        assure myself that the Defendant, Mr. Botti,
19        who, of course, is present, has had an
20        opportunity to read, and has, in fact, read
21        the presentence report prepared by the
22        probation department of the court.
23             Mr. Riccio, would you kindly place that
24        particular document before the Defendant?
25             Take a look at that, Mr. Botti, tell me:
```

1        Have you read that document previously?

2            THE DEFENDANT:  Yes, your Honor.  Yes,

3        your Honor.

4            THE COURT:  All right.  Is there any

5        factual material, statement of fact, in that

6        report, which you think is inaccurate or with

7        which you disagree?  I'm not concerned with

8        what the recommendations may be, but is there

9        anything in that report, which seems to you

10       to be wrong as a matter of fact?

11           THE DEFENDANT:  I don't know what to

12       say.

13           MR. RICCIO:  Your Honor, just let me,

14       there are a couple of things that are said

15       there about Mr. Botti that we are not in

16       agreement with.  However, given the

17       circumstances of the situation, we are not

18       contesting.

19           THE COURT:  All right.  Then I will not

20       press the subject further.  What I'll do is

21       this:  I will hear first from counsel for

22       Mr. Botti.  I should preface that by saying

23       that I have read the presentence report.  I

24       have read the briefs or memoranda submitted

25       by both the Government through its attorneys,

1          and Mr. Botti through his counsel.  I've read

2          both of those briefs and have considered what

3          they say carefully.

4               I'll hear now or shortly from counsel

5          for Mr. Botti.  When he has concluded his

6          remarks, I will, as is customary in a

7          situation like this, tender to Mr. Botti the

8          opportunity to speak to the Court himself

9          about the question of sentencing.

10              And I'll say to you, Mr. Botti, that you

11         need not say anything to me.  You can rely

12         upon what Mr. Riccio may say to you as he's

13         about to on your behalf.  You may rely upon

14         what he's written on your behalf in the brief

15         which I've already read.

16              But it is customary to tender to a

17         Defendant the opportunity to say something.

18         And if you want to, that's fine.  And you'll

19         do it, and I'll be glad to listen to you.

20         But if you don't, you need not.  You can

21         simply rely on what counsel has said and what

22         counsel has written.

23              And after that has taken place, I will

24         give the Government the opportunity to

25         address the Court on the subject of

1         sentencing.  And if, as sometimes happens,

2         something the Government says inspires or

3         provokes the Defense side to some further

4         comment, there will be an opportunity for

5         that.  So, we will go back and forth until

6         counsel have said all that they want to say.

7         And then I will pass the sentence of the

8         Court.

9              I have read everything that's been given

10        me to read.  I will listen carefully to

11        everything that counsel will say this morning

12        and the Defendant, himself, if he chooses to

13        speak -- not holding anything against him, in

14        any way, if he doesn't -- and ask any

15        questions that I may have of anyone with

16        issues that might come up.

17             So, having said that by way of preface,

18        I'll turn it over to you, Mr. Riccio.  Do you

19        wish to be heard on behalf of the Defendant?

20             MR. RICCIO:  Yes, briefly.  Briefly, if

21        I could, your Honor.

22             I'm asking the Court to impose a

23        nonguidelines sentence of a minimal period of

24        probation for Mr. Botti here this morning.

25        And I will rely in large measure on the

1        comments that I've already submitted to the

2        Court in my sentencing memorandum.

3            I'd only like to amplify them briefly by

4        saying that I think prior to this very

5        unfortunate situation, Mr. Botti's life is

6        what a United States citizen should be.  He's

7        born to a good, hard-working family, had a

8        good upbringing, chose to serve --

9        voluntarily to serve in the United States

10       military, not one, but on actually two

11       separate occasions, raised his own family,

12       had a good marriage, worked hard, worked very

13       hard, as a matter of fact.

14            And, you know, it's unfortunate, as far

15       as I'm concerned, and I know the members of

16       his family who are in attendance here this

17       morning, that I'm sorry to say his legacy

18       will be tarnished by this.  People will

19       probably not remember the many, many positive

20       things he did as a citizen, but will harpoon

21       really back to this unfortunate turn of

22       events.

23            And in asking the Court for a

24       nonguidelines period of probation, your

25       Honor, please, I think that would be just

1       punishment for what transpired here given all

2       of the circumstances that occurred.

3           The Government has raised the issue of a

4       fine for Mr. Botti.  And I don't know what

5       your Honor's inclination or feelings are

6       about that particular situation, but I would

7       respectfully suggest that that fine has

8       already been paid as reflected in

9       paragraph 46 of the PSR, in the Philippines

10      -- in Japan and in the Philippines, in the

11      Johnston Islands in 1946, '47, as well as in

12      Korea, during the period between 1951 and

13      1952, when Mr. Botti honorably served in the

14      United States military forces.

15          So, respectfully, I am asking for a

16      minimal probationary sentence in this matter,

17      given all of the circumstances regarding

18      Mr. Botti personally, his advanced years, his

19      health, et cetera, and the facts and

20      circumstances surrounding this unfortunate

21      matter.  Thank you, your Honor.

22          THE COURT:  All right, thank you.

23      Mr. Botti, anything you'd like to say

24      yourself before sentence is imposed?

25          THE DEFENDANT:  No, your Honor.

```
1              THE COURT:  Very good.
2              Does the Government wish to be heard?
3              MR. SCHECHTER:  Just briefly, your
4    Honor.
5              THE COURT:  Mr. Schechter.
6              THE WITNESS:  As your Honor knows from
7    our sentencing memorandum, we have not
8    requested a prison sentence in this case, and
9    that in itself is a little unusual in many of
10   the federal sentencings that the Government
11   represents.  Our office, in this case,
12   obviously is somewhat different, given the
13   circumstances that your Honor well knows,
14   having presided over the two trials.
15             We do, however, ask that some punitive
16   measure be imposed here in the nature of a
17   fine.  I don't, in any way, seek to belittle
18   Mr. Peter Botti's war contribution, but that
19   is not the issue before your Honor today.
20   The issue before your Honor today is there
21   has to be some message sent to a person who
22   has aided another, if you will, in committing
23   criminal activity.
24             And Peter Botti's conduct in structuring
25   was really, as your Honor well knows from the
```

```
1        trials, was at the behest of James Botti, was

2        for James Botti, and in essence, aided James

3        Botti in covering up what the Jury has

4        already concluded was acts of corruption as

5        well as acts of structuring to evade an IRS

6        lawful debt.

7            So, what we're asking the court to do

8        today is send a message, a deterrence in the

9        nature of a fine.  So, we ask that a fine be

10       imposed in the advisory guideline range of

11       3,000 to 30,000.  We leave it up to your

12       Honor to decide, and we understand that a

13       term of probation would be a period of time

14       in which he could afford to pay that fine,

15       based on his net worth, a payment schedule

16       can be set up, and that fine can be paid and

17       the right message will then be sent, that is,

18       if you help a family member commit a crime,

19       even if you don't get sent to prison, your

20       Honor, you do have to pay some type of

21       punitive measure in the nature of a fine.

22       So, we'd ask that that been imposed, your

23       Honor.

24            THE COURT:  Very well.  Thank you.

25            Any further comment from the Defense
```

Falzarano Court Reporters

1     side?

2            MR. RICCIO:  No, your Honor.

3            THE COURT:  All right.  Then I will

4     proceed with the sentencing.  And as I have

5     said, Mr. Botti will be sentenced on his plea

6     of guilty to one count of money structuring

7     in violation of the specified sections of

8     31 United States Code.

9            In considering the sentence, the first

10    question that arises, and it has been

11    referred to that question in some of the

12    things that counsel have said this morning

13    and also in their comments in the briefs,

14    presentencing briefs, that they have

15    submitted, and it is also referred to in the

16    presentence report.

17           And that is whether the sentence should

18    be a guidelines sentence, which is to say

19    confirming -- conforming to all of the

20    requirements and provisions and thou shalt

21    and thou shalt not provisions in the

22    guidelines, or whether it should be a

23    nonguidelines sentence and conform to the

24    provisions of the relevant statute.

25           There is a new sort of parlance that has

1    sprung up in federal sentencing.  In the wake

2    of the Supreme Court decisions, which require

3    no citation, that the guidelines are no

4    longer mandatory as they were when they were

5    first promulgated under statutory authority,

6    but are instead advisory.

7        And back in the days when the guidelines

8    were mandatory in their application to

9    federal sentencing, there was consideration

10   given and much use made of the word

11   "departure."  A sentencing judge could pass a

12   sentence, either more severe or more lenient

13   than the guideline range and provision would

14   indicate.

15       If he did that, he was referred to as

16   departing upwards, which sometimes the

17   Government requested him to do, or departing

18   downwards, which defense counsel and

19   frequently asked him to do.  He could do that

20   under the guideline system, but he had to

21   explain his reasons, so that they would

22   survive appellate review one way or the

23   other.

24       And a phrase was taken out of the

25   guidelines and frequently used by counsel and

```
1        sentencing judges within the context of a
2        departure from the guideline ranges.  And
3        that is whether the departure could be
4        justified.  Because under the circumstances
5        of the case, the Defendant and the case
6        against him could not be or could not
7        reasonably be placed within the heartland of
8        this sort of crime.
9            "Heartland" is the word that I remember
10       and still remember, and it suggested the
11       existence of a group of defendants whose
12       characteristics were more or less the same,
13       and whose conduct was not worthy of more
14       severe punishment or more lenient punishment
15       than that amorphous group of felons who one
16       could find in the heartland.
17           I'm not sure any court has said this,
18       but it seems to me that in the decision to
19       pass a nonguidelines sentence, instead of a
20       guidelines sentence, tends to reinvoke the
21       concept of the heartland for this kind of a
22       felony.
23           And so, a sentence passed under the
24       statute instead of the guidelines, in these
25       days of mandatory -- withdrawn, in these days
```

1        of advisory and not mandatory guidelines

2        falls within that analysis.  Can it fairly be

3        said that for one reason or another, a

4        Defendant should be sentenced, not under the

5        guidelines, because he's not in the

6        heartland, but under the statute, because

7        there are reasons for doing so.

8            The first conclusion I reach in this

9        case is that the Court should pass a

10       nonguidelines sentence upon Mr. Botti.  And

11       the conclusion -- I'll use a different

12       word -- the consensus that that is the right

13       thing to do, that is achieved in this case is

14       rather unusual at least in my experience.

15           The brief for Mr. Botti and Mr. Riccio

16       in his submission this morning asked for a

17       nonguidelines sentence.  The Government does

18       not really oppose it.  And the able probation

19       officer, who prepared the presentence report

20       is quite explicit about it.  He says on

21       page 1 of the probation department's

22       sentencing report, and sentencing

23       recommendation, "A guidelines sentence or any

24       sentence of imprisonment is believed to be

25       greater than necessary to accomplish the

1       goals of sentencing in this case."

2           Well, you can't be any more clear than

3       that.  And as I've said, there exists in this

4       sentencing procedure a rather unusual

5       consensus, explicit or implicit, that the

6       Court should pass a nonguidelines sentence.

7       I agree with that.

8           I think that there are sufficient

9       considerations in this case, sufficient

10      truths about the life that Mr. Botti has led,

11      which indicates that the Court should not

12      pass a guidelines sentence in this case.  And

13      so, I will not do so.

14          What are those factors in Mr. Botti's

15      life and in his record that caused me to

16      reach this conclusion?  Some of them have

17      been referred to already by counsel.  It is

18      indeed the fact that up until his involvement

19      in James Botti's money structuring, James

20      Botti being this Defendant's son, Mr. Peter

21      Botti had led a completely honorable life,

22      law abiding, productive, not only in his

23      later years, in the civil and commercial life

24      of Shelton, but also in the military service.

25          There were two periods of military

1    service and it caused me to reflect that when

2    one reaches the age of 80 and looks back at

3    what he's seen or experienced or knows of,

4    the time seems to shrink and things which you

5    would might have thought were centuries ago

6    or at least not any much more recent than the

7    Civil War occurred in your own lifetime,

8    indeed, during your own near adulthood.

9         Mr. Botti first went into the service

10   before he'd achieved a high school diploma in

11   February of 1946.  And I read in paragraph 46

12   of the sentencing report, that he served

13   overseas, according to his own account, which

14   is not questioned by anyone, from 1946 until

15   1948 in the United States Army during World

16   War II, there, World War II -- that's the

17   first bit of recent history -- in Japan,

18   Philippines, the Johnston Islands and several

19   other places.

20        Well, I assume from those dates and it's

21   really not material, but I'll just finish my

22   review of the facts, that he did not so much

23   serve in combat, but that he was in Japan and

24   other places assisting General MacArthur, who

25   in the days of the British colonial power

```
 1              would be referred to as the vice consul of

 2              all of Japan under military authority and

 3              control, a remarkable time in the history of

 4              the nation.  And it would appear from these

 5              dates that Mr. Botti played a part in that.

 6                   And then comes the second phase, reading

 7              again from paragraph 46, "The Defendant

 8              further served his country as a member of the

 9              Air Force Reserve.  He spent 11 months in

10              Korea between 1951 and 1952."

11                   So, we have a veteran of World War II

12              and the Korean War, serving in the military

13              service with honor and discharged honorably.

14              You don't meet that many veterans these days.

15              And the Defendant told the probation officer

16              that this was a good experience, his military

17              service, and he'd do it again.

18                   And I'm also told in the presentence

19              report, without contradiction, "His highest

20              rank achieved was sergeant and he served a

21              total of five years, 10 months and six days

22              in the military.  He was honorably discharged

23              at the completion of his service."

24                   I'm struck by Mr. Botti's obtaining the

25              rank of sergeant without having achieved a
```

```
 1            high school diploma.  It is, as I understand
 2            it with no personal experience of my own,
 3            one's officers of the command, who have a
 4            great deal to do with whether an enlisted man
 5            achieves the rank of sergeant, which is an
 6            important rank in the workings of the
 7            military.  And that speaks well of Mr. Botti,
 8            his character, his devotion to duty, his
 9            ability to succeed in that particular
10            environment.
11                 And then there is a series of jobs in
12            Shelton having most to do with the automobile
13            world.  But again, all was honorable.  As far
14            as it appears, all was free of any criminal
15            conduct, all was free as far as the PSR
16            suggests of any ground for questioning
17            Mr. Botti's honesty or integrity or good
18            character.
19                 And then we come to the son, one of the
20            siblings of Mr. Botti -- children of
21            Mr. Botti and his late wife, who suddenly
22            comes to his father and says, I need you to
23            help me out with these banks transactions.
24            And it was immediately apparent and Mr. Botti
25            acknowledged in his plea of guilty that this
```

```
 1          was wrongful conduct on James Botti's part.

 2          That it was money structuring.

 3                Mr. Botti may not have -- Mr. Peter

 4          Botti may not have known enough about the

 5          statute to use that phrase, and he probably

 6          couldn't have given the section citations as

 7          I did in the beginning of this proceeding off

 8          the top of his head, but as acknowledged by

 9          his plea, he knew that what he was doing was

10          wrong; that it was the use of his bank

11          account, Peter Botti's bank account, in order

12          to assist his son in a wrongful enterprise,

13          in a criminal enterprise, and later on to use

14          his own bank account, Mr. Peter Botti's own

15          account, and then take money from it and give

16          it to James Botti.  And this was all in aid

17          of a wrongful course of conduct involving the

18          nation's currency and the reporting

19          requirements of the Internal Revenue Service.

20          A course of conduct, which we refer to as

21          money structuring.

22                And the fact that Mr. Peter Botti

23          acceded to his son's request that he act in

24          this manner, that Mr. Peter Botti act in this

25          manner, is a source of great sorrow and
```

1    distress to Mr. Botti, himself, I'm sure, the

2    members of his family, to the community at

3    large, to this Court, because what came about

4    was that a man in his later years, who had

5    served his country honorably in the military

6    and who led a completely law abiding and

7    honorable life in the civilian world, is

8    turned, by his son's request to which

9    Mr. Peter Botti foolishly agreed, into a

10   felon.

11        His son, by this request, turned his

12   father into a felon.  That is a very

13   distressing thing to observe.  It almost

14   turns on its head the proverbial question

15   that the sins of the father may be visited

16   upon the children.  Here the sins of the

17   children were visited upon the father.  They

18   are both felons.  James Botti, because of

19   what he did himself, and Peter Botti, because

20   of what he agreed to do for his son when his

21   son asked him.

22        But the necessary foundation for

23   Mr. Peter Botti's felony is the request by

24   the son that he act as a felon.  I remember I

25   think that when I sentenced James Botti, one

1          of the factors that disturbed me about him in

2          which I took into consideration in passing

3          the sentence upon James Botti that I did, is

4          this betrayal of the duties of affection and

5          loyalty and love that he owed to his father.

6               But it does not alter the fact, and

7          Mr. Riccio does not in his able presentence

8          report -- not report -- his brief, it does

9          not really argue otherwise.  Mr. Peter Botti

10         agreed to a request his son, James, should

11         never have made of him, and consequently

12         finds himself here today at the end of a long

13         and honorable life, a convicted felon.

14              But it does seem to me that these

15         various factors, these aspects of Mr. Peter

16         Botti's personal history argue in favor of a

17         nonguidelines sentence.  I do not see him

18         within the context of money structuring as

19         within that easily recognized heartland of

20         someone who money structures for his own

21         personal, immediate gain and has had a shady

22         life up until then, and the conduct that

23         produced the money is quite often the result

24         of his own wrongdoing.

25              None of these factors exist here.  I

```
1          don't think that Mr. Peter Botti is a
2          heartland money structurer.  And so, I agree
3          with the probation officer in this case.  And
4          the agreement of counsel, explicit or
5          implicit, that the Defendant should not be
6          sentenced under the guidelines, but under the
7          statute.
8               And so, I turn to the statute.  And in
9          particular, the imposition of the sentencing
10         statute, which is found in 18 United States
11         Code, Section 3553.  There is also a
12         statutory provision, of course, which
13         provides for a maximum term of five years for
14         the charge of money structuring to which the
15         Defendant has pleaded.
16              But the first consideration must be the
17         Section 3553 factors, which Congress has said
18         are the factors to be considered in imposing
19         a sentence.  District judges are wise in
20         their sentencing remarks at a sentencing
21         procedure to deal specifically or refer to
22         with some specificity to the factors in 3553,
23         which they are considering in imposing the
24         sentence.
25              Sometimes a district judge can get away
```

23

```
1        with it in the Court of Appeals, by simply
2        reciting that I've considered all these
3        factors.  And I think the Court of Appeals
4        has indicated its preference, with which one
5        cannot quarrel, to have the district judge
6        talk a little bit about the factors
7        specifically and how they played into his
8        decision.  So, I'll do that briefly.
9             Section 3553(a) begins with this
10       language, "The Court shall impose a sentence
11       sufficient, but not greater than necessary to
12       comply with the purposes set forth in
13       paragraph 2 of this subsection."
14            That phrase "but not greater than
15       necessary" is one of the few phrases the
16       defense counsel really like in the sentencing
17       scheme of things.  And it is an important
18       phrase, I think, because it's in a statute
19       which has a broad sweep and covers all
20       sentencing proceedings.  I read it to apply
21       to nonguidelines sentences as well as
22       guidelines sentences.  So, we're to comply
23       with certain purposes as set forth in
24       paragraph 2.
25            Before we get to subparagraph 2 of
```

```
1              3553(a), we have 3553(1), which says, "The

2              Court shall consider the nature and

3              circumstances of the offense and the history

4              and characteristics of the Defendant."  I

5              think I've said enough this morning about the

6              nature and characteristics of Mr. Peter

7              Botti.  It is a factor which weighs in his

8              favor.

9                   We are commanded by the statute to

10             consider the purposes of sentencing set forth

11             in 3553(a)2.  And that commands me to

12             consider, "The need for the sentence imposed"

13             -- that's a preliminary, here come the

14             specifics -- "A, to reflect the seriousness

15             of the offense, to promote respect for the

16             law, and to provide just punishment for the

17             offense."

18                  And that is immediately followed by a

19             purpose, which overlaps a bit with the first,

20             and that is, "B, to afford adequate

21             deterrence in criminal conduct; C, to protect

22             the public from further crimes of the

23             Defendant; D," contains provisions, which I

24             do not think are relevant to this case, which

25             I have not considered much, except to
```

1        conclude they're not relevant in this case.

2            Then there's a reference to the kinds of

3        sentences available, but then I come to 4,

4        3553(a)4, "The kinds of sentence and the

5        sentencing range established for, A, the

6        applicable category of offense committed by

7        the applicable category of Defendant as set

8        forth in the guidelines."

9            So, that is a requirement as I read the

10       statute that applies even to a nonguidelines

11       sentence, like the one I propose to pass on

12       Mr. Botti.  I must consider the applicable

13       categories that one derives from a

14       guideline's mathematical calculation.

15           I don't need to stay within those

16       guidelines or give my reasons for a

17       departure, because this is not a guidelines

18       sentence.  This is a nonguidelines sentence,

19       but the guidelines are advisory, even in that

20       context.  And the Second Circuit has made it

21       clear a number of times, and I think the

22       Supreme Court as well, that a sentencing

23       judge begins with a consideration of the

24       guideline calculations, whether he's going to

25       make a guidelines sentence or a nonguidelines

Falzarano Court Reporters

```
 1          sentence.
 2               The guidelines and their calculations
 3          and their perceptions of the severity of the
 4          offense and the characteristics of a
 5          Defendant and the circumstances of the case
 6          remain and must be considered and considered
 7          first by the sentencing judge, even in a
 8          nonguidelines context.
 9               The guidelines remain as sort of a
10          continuing omnipresence in sentencing law.
11          And having said what I've said about 3553, I
12          think I have focused upon those purposes of
13          sentencing, which deal primarily, and most
14          importantly to this case.  One purpose is the
15          need to provide restitution, but the
16          presentence report says that that is not
17          applicable in this case.  I agree.
18               So, my sentencing options under the
19          guidelines having considered all of the
20          3553(a) factors and giving consideration
21          particularly to those that seem relevant to
22          this case, and concluding after that review
23          that a nonguidelines sentence is appropriate,
24          as the presentence report urges and the
25          Defendant prays for, one of the options
```

1    available to me, and requested by Defense

2    counsel, is probation.

3        That gives rise to another reason, which

4    I should put on the record, I think, why I

5    prefer in the totality of circumstances

6    probation to a guidelines sentence.  Under

7    the presentence report's analysis, with which

8    I agree, if I passed the guidelines sentence,

9    probation would not be an option.  It is, if

10   I provide or impose, a nonguidelines

11   sentence.  And because I think that it is the

12   proper resolution in this case, that's

13   another reason for imposing a nonguidelines

14   sentence.

15       Under the applicable statute to

16   probation, the probation period may be one to

17   five years.  The guideline provisions are not

18   applicable in this analysis for the reasons

19   stated.  A fine may be imposed and there the

20   guidelines do give us a range of 3,000 to

21   $30,000.

22       Another statute requires that I impose a

23   $100 special assessment upon Mr. Botti.  I

24   accept that the sentence should be

25   nonguidelines, and I impose the following

```
1          sentence upon Mr. Botti.
2               And then having done that, I will
3          conclude by briefly giving my reasons for
4          imposing the particular sentence that I did.
5          I do this not for the pleasure of going on
6          talking.  I don't enjoy it that much and
7          sentencing proceedings are not entirely
8          pleasant proceedings for anybody involved.
9          But I think it's important that a Defendant
10         and his attorney and the able prosecutors in
11         this case know why it is that I did what I
12         did.  That's a question of specialized
13         knowledge, but there's also a benefit, I
14         think, of more generalized knowledge for the
15         Court of Appeals, if this sentence is
16         reviewed by either side, as it could be, at
17         least they could ask.
18              And sometimes it is useful -- well, it's
19         always useful -- for the Court of Appeals
20         particularly in a situation where discretion
21         plays a part in what the district judge did,
22         to know why did the district judge exercise
23         his discretion in the way he did?  It
24         promotes a more meaningful review at the
25         appellate level.
```

```
1              But also the Government rightly stresses
2         the need of general deterrence in this case.
3         And that may be one area where the Government
4         and defense counsel do not see entirely eye
5         to eye in a sentencing proceeding where
6         there's a remarkable degree of consensus and
7         uniform belief, as we have in this case.
8              But general deterrence, I think, is a
9         very important condition.  And it has played
10        something of a part in the sentence I've
11        fashioned.  I will say something a little bit
12        more about that at the very end.
13             But the court's sentence in this case is
14        as follows:  The Defendant, Peter Botti, is
15        sentenced to a term of one year of probation.
16        He is fined the amount of $3,000.  The terms
17        and conditions of probation are set forth,
18        for the large measure, in the presentence
19        department's recommended sentence.
20             But for the sake of this record and for
21        inclusion in this judgment of conviction and
22        sentence, I impose and include the following:
23        In addition to the standard conditions of
24        probation, it is recommended that the
25        following mandatory conditions be imposed:
```

Falzarano Court Reporters

```
1              One, the Defendant shall not commit
2       another federal, state or local offense; two,
3       if a fine is imposed that has not been paid
4       upon release to supervised release -- well,
5       that doesn't really apply, but it applies in
6       the probationary period -- the Defendant
7       shall adhere to an installment schedule to
8       pay that fine; 3, the Defendant shall pay the
9       assessment imposed in accordance with
10      18 United States Code, Section 3013, which
11      reminds me to specifically include in the
12      sentence that the Defendant is required to
13      pay a special assessment of $100, that is, in
14      addition to the fine of $3,000.
15              The Defendant shall cooperate in the
16      collection of a DNA sample from the
17      Defendant, if the probation Defendant
18      decides, in its own discretion, that it needs
19      to have a DNA sample.  At the suggestion of
20      the probation officer in this case,
21      Mr. Bouffard, with whom I conferred yesterday
22      in preparation of the sentence, the Court
23      waives from the conditions of probation, be
24      they mandatory or discretionary, any urine
25      testing.
```

```
 1              In the view of the probation officer,

 2         that is simply not necessary and would be not

 3         at the least productive in this case.  Mr.

 4         Botti is in his '80s.  His health is not

 5         good.  He has serious cardio problems.  He is

 6         a surviving cancer victim.  He's got a number

 7         of things for which he receives the ongoing

 8         care of his treating physicians, who have

 9         written to me in connection with this case.

10              And for the sake of completeness, I

11         would add that to his age and to his law

12         abiding life and honorable military service,

13         I add his present physical condition and his

14         medical problems and his need for continuing

15         care by his physicians.  I stop short of

16         saying that he could not go to prison because

17         of his health, but it is a factor to be

18         considered in fashioning the sentence that I

19         have imposed.  And I amend the record,

20         amplify the record a bit to include that

21         factor, returning to the conditions of

22         probation.

23              The next numbered condition, the

24         Defendant shall pay any fine that is imposed

25         by this judgment payable immediately at the
```

```
 1            rate of no less than $250 per month.  The

 2            monthly payment schedule may be adjusted

 3            based on the Defendant's ability to pay as

 4            determined by the probation officer and

 5            approved by the Court.

 6                 I pause at this moment in giving the

 7            sentence to say something about the fine and

 8            that suggested installment amount.

 9            Mr. Botti's present financial condition has

10            been dealt with on pages 9 and 10 of the

11            presentence report, where a study is made of,

12            first, his net worth, and, secondly, his net

13            monthly cash flow.

14                 The net monthly cash flow is very

15            modest.  The income reflected on this

16            statement is principally Social Security.

17            The expenses are necessary living expenses.

18            And when the necessary living expenses are

19            deducted from a relatively modest income, a

20            net monthly sum of $268.10 results.  Well,

21            his -- a fine of $3,000, which is a guideline

22            figure, the lower one, beyond the discernable

23            financial ability of Mr. Botti to pay it, if

24            it were, that would be an argument against

25            imposing it.
```

```
 1              But the net worth gives us some
 2         additional information.  Mr. Botti owns and
 3         lives in his own home on North Meadowridge
 4         Drive.  That is valued at $350,000, which the
 5         presentence report indicates Mr. Bouffard,
 6         the officer, obtained by consulting that
 7         ubiquitous real estate program, the Zillow
 8         people, and they gave that amount.  And it's
 9         not quarreled with, I believe, in the
10         subsequent briefs of counsel.
11              And then this information was furnished
12         by Mr. Botti.  He has a mortgage of $98,931
13         presently.  I don't quite understand why
14         mortgage payments on that outstanding
15         mortgage are not included in necessary living
16         expenses, but they're not.
17              Mr. Bouffard, when I spoke to him
18         yesterday, wasn't quite sure where they are
19         or not, but it's possible -- I know the
20         objection, anything is possible -- but it is
21         possible, and, perhaps, not implausible in
22         this case that Mr. Botti's family are
23         assisting him with that.  But taking the
24         figures that appear on page 9 and 10 at full
25         value, Mr. Botti may very well have an equity
```

1      of some $250,000 in his house, which he owns.

2           So, it would seem to fund a $3,000 fine

3      is not beyond a reasonable capacity of this

4      Defendant.  If it proves to be, then in the

5      provision I've just read, the condition I've

6      just read, which is recommended by the

7      probation department, the monthly payment of

8      $250 that this order directs Mr. Botti to pay

9      against his fine may be adjusted, based on

10     the Defendant's ability to pay, as determined

11     by the probation officer and approved by the

12     Court.  And the probation officer, expert at

13     dealing with situations like this, and can

14     decide whether a change should be made.

15          Next, condition of probation.  The

16     Defendant shall not incur new credit card

17     charges or open additional lines of credit

18     without the permission of the probation

19     officer until the Defendant's criminal debt

20     obligation is paid.

21          Next condition, the Defendant shall

22     provide the probation officer with access to

23     requested financial information.

24          And, lastly, the Defendant shall not

25     possess a firearm or other dangerous weapon.

1          So, that is the sentence.  One year

2     probation, a fine of $3,000, a special

3     assessment of $100, and conditions applicable

4     to probation in the wording that I have just

5     read into this record and will be included in

6     the judgment of conviction and sentence.

7          I will conclude by addressing the

8     concern, the factor, which is specifically

9     noted in Section 3553(a), and the Government

10    has stressed in its presentence brief and in

11    what Mr. Schechter just submitted to the

12    Court this morning.  And that is the need for

13    general deterrence.

14         There's a certain irony in this case

15    that one of the defenses that able counsel

16    for Mr. James Botti tried to spread all over

17    the record in the trial of Mr. James Botti,

18    was that in the friendly, tightly knit city

19    of Shelton, everybody knew everybody.  Their

20    parents knew the parents of that generation.

21    It had gone on that way in Shelton for a long

22    time.  One's high school football coach turns

23    into the superintendent of schools.

24         I'm not sure that's true, but I'm trying

25    to strike the flavor of the place.  It almost

1    sounded like *Brigadoon.*  And in particular,

2    this was the attempted thrust of the Defense,

3    James Botti's conduct, as revealed by the

4    evidence, should be viewed and understood in

5    the context of a friendly town or friendly

6    city where everybody did favors for everybody

7    else and thought nothing of it.  And here was

8    Mr. James Botti being prosecuted for being a

9    nice guy and acting in the way that everybody

10   acted in Shelton.

11       The Government wasn't very happy with

12   that line of evidence.  And it didn't get

13   into the record much, but it was very much a

14   theme, which echoed throughout that trial and

15   some of the pretrial motion practice.  And to

16   the extent that that is true, that everybody

17   in that old, historic city acquiesces and

18   accepts without criticism the conduct of

19   everybody else, who, like them, have lived in

20   Shelton all their lives and the families are

21   close together.

22       That increases, it does not lessen, the

23   need for a general deterrence, because

24   everyone must understand not only in Shelton,

25   but everywhere in the Republic, but focusing

```
1            particularly on Shelton in the context of

2            this case, everyone must understand that you

3            cannot attempt to influence public figures

4            for your own personal gain.  You cannot

5            engage in money structuring.  You cannot

6            conceal the existence of cash from IRS

7            agents, who are inquiring into its existence.

8            You cannot lie to them, those agents, I mean,

9            or anyone else of the Government.  And if you

10           do any of those things, you commit a federal

11           felony.  And if you are convicted of it,

12           there are consequences.

13                That I think sums up the general

14           deterrence that the Government argues for in

15           this case.  I may not do it full justice, but

16           Mr. Schechter and Mr. Kale will have to live

17           with that, but I think that's the main thrust

18           of it and I agree with it.

19                So, how does a year of probationary

20           supervision and a $1,000 fine add to

21           reinforce that sentencing purpose of general

22           deterrence, by which I mean in part, at least

23           in the context of this case, the people of

24           Shelton and their public servant.

25                I think in this way, Shelton being the
```

```
 1              kind of close-knit community that has been
 2              described to me, I would suppose, I think it
 3              is safe to assume that the legal problems and
 4              the criminal prosecutions of the Botti
 5              family, son and father, are subjects of
 6              widespread knowledge in Shelton and
 7              commentary.  And what they will know, what
 8              they will learn from an examination of these
 9              two cases together -- and I think it's fair
10              in this context to regard this as the second
11              half of the sentencing of the Botti family,
12              son and father -- what they will learn is
13              that the son, who engineered felonious
14              conduct for his own personal gain, and in
15              doing so, implicated the honesty and
16              integrity of public officials, is serving a
17              considerable period, a significant period of
18              jail time.
19                   And the father, who did nothing more,
20              but nothing less than, assisting the son in
21              his illegal conduct by money structuring,
22              using his, the father's, own bank account for
23              that purpose, is convicted as a felon, is
24              placed on probation, and is fined an amount,
25              which would be considerable for him, I would
```

1     think.

2          So, when general deterrence or when the

3     people, who make up that universe we refer to

4     as general deterrence, looks at the family,

5     that's what they see.  The principal

6     architect did time in prison, the older man,

7     the father, the honorable record spoiled, is

8     on probation and is fined.

9          And I think that those sentences passed

10    upon the members of the Botti family who

11    broke the law, and who were sentenced in

12    accordance with their proportional

13    participation and fault, as I've tried to

14    summarize it, they will look at that and say,

15    This is a good course of conduct not to

16    follow, because if you get caught, something

17    is going to happen to you, if you are

18    convicted.  Something is going to happen to

19    you, which will not be pleasant.

20         That's what general deterrence really

21    means.  That's why it would not have been

22    possible for me as a sentencing judge, to

23    pass sentences of the degree of leniency that

24    counsel for James Botti asked me to do, and

25    to go all the way down the road with

1          Mr. Riccio in this case.

2              To do that, to be as lenient as that,

3          would run the risk of not imposing a general

4          deterrence upon the citizens of Shelton, but

5          a general reassurance that you can get away

6          with it, and if you get caught, nothing will

7          happen to you, not acceptable and not imposed

8          in either of these cases, including the case

9          before me today, as best I can evaluate the

10         cases.

11             All of these sentencing provisions and

12         conditions of probation will be included in

13         the document, which is the judgment of this

14         court of conviction and sentence.

15             But the Court having delivered its

16         sentence in this case, let me ask counsel,

17         Mr. Schechter, does the Government consider

18         this as a lawful sentence?  Is there

19         something I have done that I should not have

20         done?  Or is there something I have not done,

21         which I should do?  Does the Government have

22         any comments on the sentence as passed?

23             MR. SCHECHTER:  Your Honor, the sentence

24         is lawful.  We have no comment.  We know your

25         Honor will at some point advise Mr. Botti of

```
1           his right to appeal.

2                THE COURT:  Yes.

3                MR. SCHECHTER:  Otherwise, we have no

4           problem at all with the sentence.

5                THE COURT:  All right.  Thank you for

6           that.  I'm reminded, Mr. Schechter, that

7           Mr. Botti was indicted by the Government in a

8           two-count indictment.  He pleaded to Count 2.

9           Does the Government have anything to say

10          about Count 1?

11               MR. SCHECHTER:  Yes, your Honor.  When

12          the sentence has been finally imposed, your

13          Honor, the Government will move to dismiss

14          Count 1 with prejudice.

15               THE COURT:  Very good.  And presumably,

16          you will not oppose that, Mr. Riccio?  It's

17          certainly not before me today, but it was

18          useful to have that remark on the record, I

19          think.

20               Mr. Riccio, does the Defendant consider

21          this to be a lawful sentence?  Any

22          application you'd like to make with what it

23          says or does not say?

24               MR. RICCIO:  No, he considers it lawful,

25          your Honor.  Thank you.
```

Falzarano Court Reporters

1          THE COURT:  All right.

2          MR. RICCIO:  Thank you.

3          THE COURT:  Lastly, Mr. Botti, I

4     recommend you, as the statute commands me to

5     do, that you have the right to appeal to the

6     Court of Appeals from the sentence I have

7     just passed upon you.

8          You may, if that is your desire and your

9     instruction of counsel, you may rely upon

10    Mr. Riccio to file a timely notice of appeal

11    and perform the necessary acts in the Court

12    of Appeals, unless he should ask for any

13    reason to be relieved from further

14    representation.

15         And I don't mean, Mr. Riccio, to suggest

16    what you're going to do, but may I count on

17    you to file a timely notice of appeal, if

18    that is your client's instruction in this

19    case?

20         MR. RICCIO:  You may, your Honor.

21         THE COURT:  All right.  And I'll also

22    add to my advise to you, Mr. Botti, that if

23    it should turn out that you cannot afford

24    counsel to go forward with the appeal, if you

25    want to appeal this judgment, then the Court

43

```
1              would see to it that counsel was appointed to
2              be paid by public funds and without expense
3              to yourself.
4                   Do you understand the right of appeal
5              that you have, as I've explained it to you?
6                   THE DEFENDANT:  Yes, your Honor.
7                   THE COURT:  Any questions on that?
8                   THE DEFENDANT:  No, sir.
9                   THE COURT:  All right.  Then that is the
10             Court's sentence, I'm obliged to the counsel.
11
12                  (Court adjourned:  11:46 a.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                    CERTIFICATE

2

3       I hereby certify that the foregoing 43 pages are a

4    complete and accurate computer-aided transcription of

5    my original stenotype notes taken of the sentencing in

6    the case of UNITED STATES vs. PETER C. BOTTI, which was

7    held in before U.S.D.C. Senior Judge Charles S.

8    Haight, Jr. 157 Church Street, New Haven, Connecticut,

9    on February 9, 2011.

10

11

12    _____

                     Mary Falzarano Mayhew, LSR #477
13                   Licensed Shorthand Reporter

14

15

16

17

18

19

20

21

22

23

24

25